# United States Court of Appeals for the Federal Circuit

---

**GODO KAISHA IP BRIDGE 1,**
*Plaintiff-Appellee*

**v.**

**TCL COMMUNICATION TECHNOLOGY HOLDINGS LIMITED, TCT MOBILE LIMITED, TCT MOBILE (US) INC., TCT MOBILE, INC.,**
*Defendants-Appellants*

---

2019-2215

---

Appeal from the United States District Court for the District of Delaware in No. 1:15-cv-00634-JFB-SRF, Senior Judge Joseph F. Bataillon.

---

Decided: August 4, 2020

---

KEVIN JOHN POST, Ropes & Gray LLP, New York, NY, argued for plaintiff-appellee. Also represented by ALEXANDER E. MIDDLETON, STEVEN PEPE; DOUGLAS HALLWARD-DRIEMEIER, Washington, DC; SAMUEL LAWRENCE BRENNER, Boston, MA; JAMES RICHARD BATCHELDER, East Palo Alto, CA.

JOHN NILSSON, Arnold & Porter Kaye Scholer LLP, Washington, DC, argued for defendants-appellants. Also represented by NICHOLAS M. NYEMAH, ANDREW TUTT.

———————————

Before PROST, *Chief Judge,* NEWMAN and O'MALLEY,
*Circuit Judges.*

O'MALLEY, *Circuit Judge.*

In this appeal, the parties dispute whether the patentee was permitted to prove that the Appellants' products infringed the claims of the asserted patent by showing that: (1) the patent claims are essential to mandatory aspects of the Long-Term Evolution ("LTE") standard; and (2) the accused products practice that standard. Appellants assert that, if Appellee wanted to resort to that theory of infringement, it was required to ask the court to decide the question of the claims' essentiality to the standard in the claim construction context and that the court needed to decide that question as a matter of law. Unsurprisingly, Appellee disagrees. We find no error in the submission of these questions to the jury in the context of an infringement trial.

BACKGROUND

This appeal arises from a patent infringement action filed in the United States District Court for the District of Delaware. Patent Owner Godo Kaisha IP Bridge 1 ("IP Bridge") sued TCL Communication Technology Holdings Limited, TCT Mobile Limited, TCT Mobile (US) Inc., and TCT Mobile, Inc. (collectively, "TCL"), alleging infringement of U.S. Patent Nos. 8,385,239 and 8,351,538.

The district court held a jury trial in 2018. At trial, IP Bridge's theory of infringement hinged on what it told the jury were two "bedrock facts": that the patents-in-suit are essential to the LTE standard and that TCL's accused devices are LTE-compatible. Relying on *Fujitsu Ltd. v. Netgear Inc.*, 620 F.3d 1321 (Fed. Cir. 2010) (holding, on appeal from a summary judgment decision, that a district court may rely on an industry standard in analyzing

infringement), IP Bridge put forth evidence to demonstrate that (1) the asserted claims are essential to mandatory sections of the LTE standard; and (2) the accused products comply with the LTE standard. *Godo Kaisha IP Bridge 1 v. TCL Commc'n Tech. Holdings Ltd.*, No. CV 15-634-JFB, 2019 WL 1879984, at \*3 (D. Del. Apr. 26, 2019) ("*Infringement Op.*"). As the district court pointed out, TCL did not present any evidence to counter that showing. *Id.*

After a seven-day jury trial, the jury found that TCL was liable for infringement of the asserted claims by its sale of LTE standard-compliant devices such as mobile phones and tablets. The jury also awarded IP Bridge damages in the amount of $950,000. *Godo Kaisha IP Bridge 1 v. TCL Commc'n Tech. Holdings Ltd.*, No. CV 15-634-JFB, 2019 WL 1877189, at \*1 (D. Del. Apr. 26, 2019) ("*Damages Op.*"). Following the verdict, both parties filed motions for post-trial relief.

In its motion for judgment as a matter of law ("JMOL"), TCL contended that IP Bridge's theory of infringement was flawed because the *Fujitsu* "narrow exception" to proving infringement in the standard way—*i.e.*, by showing that each element in the asserted claim is present in the accused devices—should not apply in this case. *Infringement Op.* at \*1. Specifically, TCL argued that IP Bridge could not rely on the methodology approved in *Fujitsu* because *Fujitsu* only approved that methodology in circumstances where the patent owner asks the district court to assess essentiality in the context of construing the claims of the asserted patents. The district court did not accept TCL's argument that IP Bridge's theory of infringement was legally flawed. It denied TCL's motion, concluding that substantial evidence supported the jury's infringement verdict. *Id.* at \*3–4.

IP Bridge also sought post-trial relief in the context of a motion to amend the judgment under Federal Rule of Civil Procedure 59(e). IP Bridge sought supplemental

damages and an accounting of infringing sales of all adjudicated products through the date of the verdict, and ongoing royalties for TCL's LTE standard-compliant products, "both adjudicated and non-adjudicated." *Damages Op.* at \*2. The court awarded the requested pre-verdict supplemental damages. It also found that the jury's award represented a FRAND royalty rate of $0.04 per patent per infringing product and awarded on-going royalties in that amount for both the adjudicated products and certain unadjudicated products. It reasoned that, because IP Bridge demonstrated at trial that LTE standard-compliant devices do not operate on the LTE network without infringing the asserted claims, the unaccused, unadjudicated products "are not colorably different tha[n] the accused products." *Id.* at \*6. TCL timely appealed the court's infringement finding and its rulings regarding royalties. We affirm all of the court's rulings and the verdict predicated thereon. We write only to address—and refute—TCL's contention that whether a patent is essential to any standard established by a standard setting organization is a question of law to be resolved in the context of claim construction.

## DISCUSSION

We review a denial of JMOL under the law of the regional circuit. *Energy Transp. Grp., Inc. v. William Demant Holding A/S*, 697 F.3d 1342, 1350 (Fed. Cir. 2012). "In the Third Circuit, review of denial of JMOL is plenary." *Finjan, Inc. v. Secure Computing Corp.*, 626 F.3d 1197, 1202 (Fed. Cir. 2010) (citations omitted). JMOL is "'granted only if, viewing the evidence in the light most favorable to the nonmovant and giving it the advantage of every fair and reasonable inference, there is insufficient evidence from which a jury reasonably could find' for the nonmovant." *TransWeb, LLC v. 3M Innovative Props. Co.*, 812 F.3d 1295, 1301 (Fed. Cir. 2016) (quoting *Lightning Lube, Inc. v. Witco Corp.*, 4 F.3d 1153, 1166 (3d Cir. 1993)). Infringement is a question of fact, "reviewed for substantial

evidence when tried to a jury." *ACCO Brands, Inc. v. ABA Locks Mfrs. Co.*, 501 F.3d 1307, 1311 (Fed. Cir. 2007). A factual finding is supported by substantial evidence if a reasonable jury could have found in favor of the prevailing party in light of the evidence presented at trial. *See Tec Air, Inc. v. Denso Mfg. Mich. Inc.*, 192 F.3d 1353, 1357–58 (Fed. Cir. 1999).

In cases involving standard essential patents, we have endorsed standard compliance as a way of proving infringement. *See, e.g.*, *Ericsson, Inc. v. D-Link Sys., Inc.*, 773 F.3d 1201, 1209 (Fed. Cir. 2014) (because a "standard *requires* that devices utilize specific technology, compliant devices *necessarily* infringe certain claims . . . cover[ing] technology incorporated into the standard"); *Dynacore Holdings Corp. v. U.S. Philips Corp.*, 363 F.3d 1263 (Fed. Cir. 2004) (affirming non-infringement judgment because patentee did not show that a particular claim limitation was mandatory in the standard). This appeal presents a question not expressly answered by our case law: who determines the standard-essentiality of the patent claims at issue—the court, as part of claim construction, or the jury, as part of its infringement analysis?

On appeal, as it did before the district court, TCL argues that IP Bridge's theory of infringement relied on an improper reading of our decision in *Fujitsu*. TCL states that, to establish literal infringement, a patentee must demonstrate that every limitation set forth in a claim is present in the accused product. In TCL's view, *Fujitsu* carved out a narrow exception to this requirement by stating that "[i]f a district court construes the claims and finds that the reach of the claims includes any device that practices a standard, then this can be sufficient for a finding of infringement." TCL Br. 31–32 (quoting *Fujitsu*, 620 F.3d at 1327). TCL argues that, under *Fujitsu*, *the court* must first make a threshold determination *as part of claim construction* that all implementations of a standard infringe the claims. It argues that IP Bridge never asked the

district court to conduct such an analysis and the question should not have gone to the jury.

IP Bridge responds that standard-essentiality is a classic fact issue, and is the province of the factfinder. IP Bridge Br. 27. In IP Bridge's view, *Fujitsu* does not stand for the proposition that the determination of standard-essentiality must occur in the context of claim construction. IP Bridge asks us to read *Fujitsu* in the context of its procedural posture—*Fujitsu* involved an appeal from summary judgment and there was no involvement of a jury for that reason. We agree with IP Bridge that standard-essentiality is a question for the factfinder.

In *Fujitsu* the appellant asked us to find no evidence of direct infringement because the district court relied on the standard, rather than the accused products, in assessing infringement. We rejected the appellant's demand for a rule "precluding the use of industry standards in assessing infringement." *Fujitsu*, 620 F.3d at 1326. The holding of *Fujitsu*, in its proper context, is illuminating:

> We hold that a district court may rely on an industry standard in analyzing infringement. If a district court construes the claims and finds that the reach of the claims includes any device that practices a standard, then this can be sufficient for a finding of infringement. We agree that claims should be compared to the accused product to determine infringement. However, if an accused product operates in accordance with a standard, then comparing the claims to that standard is the same as comparing the claims to the accused product. We accepted this approach in *Dynacore* where the court held a claim not infringed by comparing it to an industry standard rather than an accused product. An accused infringer is free to *either prove* that the claims do not cover all implementations of

the standard *or to prove* that it does not practice
the standard.

*Id.* at 1327 (emphasis added).  We recognized in *Fujitsu*
that the fact that a patent's claims cover an industry stand-
ard does not necessarily establish that all standard-compli-
ant devices implement the standard in the same way.  And
we noted that an asserted patent claim might not cover all
implementations of an industry standard.  In such cases,
we guided, infringement *must* be proven by comparing the
claims to the accused products, or by proving that the ac-
cused devices "implement any relevant optional sections of
the standard."  *Id.* at 1328.  Thus, *Fujitsu* teaches that
where, but only where, a patent covers mandatory aspects
of a standard, is it enough to prove infringement by show-
ing standard compliance.

TCL's entire appeal rests on its misreading of a single
statement from *Fujitsu*.  *See id.* at 1327 ("If a district court
construes the claims and finds that the reach of the claims
includes any device that practices a standard, then this can
be sufficient for a finding of infringement.").  But we did
not say in *Fujitsu* that a district court must first determine,
as a matter of law and as part of claim construction, that
the scope of the claims includes any device that practices
the standard at issue.  To the contrary, in reviewing the
district court's summary judgment decision (where no facts
were genuinely in dispute), we stated that, if a district
court *finds* that the claims cover any device that practices
a standard, then comparing the claims to that standard is
the same as the traditional infringement analysis of com-
paring the claims to the accused product.  That statement
assumed the absence of genuine disputes of fact on the two
steps of that analysis, which would be necessary to resolve
the question at the summary judgment stage.  The passing
reference in *Fujitsu* to claim construction is simply a recog-
nition of the fact that the first step in any infringement
analysis is claim construction.

Our reading of *Fujitsu* is buttressed by that decision's reference to *Dynacore*. There, too, we reviewed a decision stemming from a summary judgment motion. We affirmed the judgment of non-infringement because the patentee did not show that a particular claim limitation was mandatory in the standard. *Dynacore*, 363 F.3d at 1278. We also noted the district court's finding that the patentee's experts "contribute[d] little other than a conclusory opinion," failing to raise a dispute over material facts for trial. *Id.* at 1277–78.[1] Although we referenced the claim construction by which the patentee was bound, *Dynacore* considered the possibility of the dispute going to the jury and rejected it based on undisputed facts. Thus, under *Dynacore*, which *Fujitsu* referenced in its holding, standard-essentiality of patent claims is a fact issue. Like any other fact issue, it may be amenable to resolution on summary judgment in appropriate cases. But that does not mean it becomes a question of law.

Determining standard-essentiality of patent claims during claim construction, moreover, hardly makes sense from a practical point of view. Essentiality is, after all, a fact question about whether the claim elements read onto mandatory portions of a standard that standard-compliant devices must incorporate. This inquiry is more akin to an infringement analysis (comparing claim elements to an accused product) than to a claim construction analysis (focusing, to a large degree, on intrinsic evidence and saying what the claims mean). As we explained in *Fujitsu*, one way an accused infringer can successfully defeat allegations of infringement in the standard essential patent

---

[1]    Here, by contrast, IP Bridge's expert testified at length about how each claim limitation is present in mandatory portions of the LTE standard and how TCL's LTE standard-compliant devices practice mandatory portions of the standard.

context, is by rebutting a patentee's assertion that its patents are essential to the standard. 620 F.3d at 1327. This statement would make no sense if claim construction were sufficient to resolve the question.

Accordingly, we reject TCL's reading of *Fujitsu*. Where, as here, there are material disputes of fact regarding whether asserted claims are in fact essential to all implementations of an industry standard, the question of essentiality must be resolved by the trier of fact in the context of an infringement trial. Viewed through this lens, we find that substantial evidence fully supports the jury's infringement verdict.[2]

## CONCLUSION

We have carefully considered TCL's remaining arguments—including its argument that the district court abused its discretion in awarding on-going royalties in this case. We see no reason to disturb the district court's conclusions. Accordingly, we affirm.

## **AFFIRMED**

---

[2]    TCL's own documents and marketing materials make clear that its products are standard-compliant—a conclusion TCL does not refute on appeal. And the jury was free to credit IP Bridge's substantial expert evidence that IP Bridge's patent claims are essential to mandatory portions of the standard.